## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

**SEAN MURPHY**
**ROBERT BARNES**                                 **CA NO  20 : 00694**
**DANIEL REALE**

**VS**

**NED LAMONT**

## VERIFIED COMPLAINT

The Plaintiffs, Sean Murphy, Robert Barnes and Daniel Reale, complain, to the best of their knowledge and belief, as follows:

### I. The Parties

1. Plaintiffs Sean Murphy and Robert Barnes are residents of Southbury, Connecticut.

2. Plaintiff Daniel Reale is a resiident of Plainfield, Connecticut.

3. Defendant Ned Lamont is the Governor of Connecticut. At all times alleged herein he was acting under color of law.

### II. Jurisdiction and Venue

4. The Plaintiffs bring this Action pursuant to 42 USC §1983. This Court has subject matter jurisdiction because it involves a Federal Question and numerous Constitutional questions, and jurisdiction is invoked pursuant to 28 USC §1331. This Court also has supplemental jurisdiction due to the Counts of this Complaint in the Nature of Quo Warranto.

1

5.  The Defendant purports to have waived personal jurisdiction by opearation of his Executive Order 7G, suspending the requirement for service of process. That act by the Defendant confers personal jurisdiction without service of process, by operation of his own order.

### III. Common Facts Related to All Counts

6.  On March 10, 2020, Governor Ned Lamont declared a State of Emergency throughout Connecticut, "pursuant to Sections 19a-131a and 28-9 of the Connecticut General Statutes", and set said emergency to expire September 9, 2020. Said emergency was declared: "In response to the global pandemic of COVID 19 disease associated with a novel coronavirus that is currently affecting multiple countries and states and has resulted in the spread of infections in Connecticut and surrounding states, as well as resulting shortages of personal protective equipment and other supplies that could jeopardize public safety and civil preparedness, and in order to provide me and other appropriate officials with all authorities necessary to limit the spread of the COVID 19 coronavirus and protect public safety within the State of Connecticut...", and for that specific reason alone.

7.  CGS §19a-131a allows *only* (with the exception of renewal and

2

enforcement mechanisms, the following actions to be taken: "In the event of a state-wide or regional public health emergency, the Governor shall make a good faith effort to inform the legislative leaders specified in subsection (b) of this section before declaring that the emergency exists and may do any of the following: (1) Order the commissioner to implement all or a portion of the public health emergency response plan developed pursuant to section 19a-131g; (2) authorize the commissioner to isolate or quarantine persons in accordance with section 19a-131b; (3) order the commissioner to vaccinate persons in accordance with section 19a-131e; (4) apply for and receive federal assistance; or (5) order the commissioner to suspend certain license renewal and inspection functions during the period of the emergency and during the six-month period following the date the emergency is declared to be over."

8. CGS §28-9 of the General Statutes requires, in order to be triggered, "...event of serious disaster, enemy attack, sabotage or other hostile action or in the event of the imminence thereof...", of which there was none, presently now is none, and which the March 10, 2020 Declaration of a State of Emergency does not describe.

9. Defendant Lamont then proceeded to take, in the absence of any lawful authority to do so, substantial, unprecedented actions

exclusively in his name and by executive order, alone, which have

included the following (all of which are published at

https://portal.ct.gov/Coronavirus/Pages/Emergency-Orders-issued-
by-the-Governor-and-State-Agencies ):

(a) Executive Order 7 limited all social and other gatherings to less

than 250 people, including political and religious gatherings and

gatherings of any kind, and Executive Order 7D further restricted it to

50 people, after which 7N further restricted it to no more than five

people.

(b) Executive Order 7F closed malls and large places of gatherings.

(c) Executive Order 7G (initially and as amended from time to time),

absent a rebellion or invasion (or any of the requirements of CGS

§28-9), suspended the requirements to serve civil process,

suspended statutes of limitations, suspended the right to speedy trial

in criminal matters, closed down the State Court system, and severely

limited the business of restaurants and other public establishments.

(d) Executive Order 7H put out of business what, by fiat, Defendant

Lamont deemed "non-essential" businesses, and otherwise

ordering all types, classes and sorts of businesses imaginable to

order staff to work from home.

(e) Executive Order 7I suspended both in person shareholder

4

meeting requirements for corporations and in person meeting requirements for Town Budgets and referenda.

(f) Executive Order 7M suspended mandatory minimum time requirements to respond to Connecticut Freedom of Information Act requests as made under CGS §1-200, et seq.

(g) Executive Order 7N constituted, by executive fiat, a prohibition on "community, civic, leisure, or sporting events; parades; concerts; festivals; plays or live performances; conventions; and similar activities"

(h) Executive Order 7R, by executive fiat, restricted access to public parks  and forests. It also required, without any gaurantee or financial ability of local governments to do so, continued payment of teachers and other education staff, despite the fact that all schools in this State were closed.

(i) Executive Order 7S converted virtually every public store in this State into an ergonomic hellscape by requiring direction arrows and overly restrictive and impossible movement and distancing requirements, substantially impairing the ability of the Plaintiffs and others similarly situated to shop,  hold conversations with those who they would associate with in public and  otherwise conduct their business. Executive Order 7S also required insurance companies to

5

impose a mandatory grace period on insurance policies and renewals, which will result in dramatically increased premiums for all the Plaintiffs and every single motorist in this State once the Executive Orders are rescinded.

(j) Executive Order 7X extended the existing orders and restrictions until May 20, 2020, even though no condition as required to trigger CGS §28-9 existed.

(k) Executive Order 7BB requires that everyone wear face masks in public.

(l) Executive Order 7CC, in contravention to the General Statutes as passed by the General Assembly, allows the State's municipalities, without input or voting of any kind from Citizens, to spend money, commit municipalities to grant applications and requirements and assume virtually unlimited amounts of debt.

9. The statutory scheme provided for by CGS §19a-131a specifically directs the Commissioner of Public Health to take certain actions pertaining to quarantine and vaccination, as administered by §19a-131b and 19a-131e. However, because the Defendant issued executive orders shutting down the State Courts, there is no functional access to appeal prior to the Plaintiffs' movement and liberty being restricted. As to §19a-131b, pertaining to isolation or

6

quarantine, those orders must be appealed to the Probate Courts, which the Defendant and the Municipalities both shut down through Executive Order 7K in conjunction with the shut down of the public buildings in which they are housed.

10. The Defendant had no authority to issue any isolation or quarantine orders as he has. Only the Commissioner of Public Health had any authority to issue such orders, and per CGS §19a-131b(b), was required to take into account: "The commissioner shall adhere to the following conditions and principles when quarantining or isolating individuals, groups of individuals or individuals present within a geographic area: (1) Quarantine and isolation shall be by the least restrictive means necessary to prevent the spread of a communicable disease or contamination to others and may include, but not be limited to, confinement to private homes or other private or public premises; (2) quarantined individuals shall be confined separately from isolated individuals; (3) the health status of quarantined or isolated individuals shall be monitored frequently to determine if they continue to require quarantine or isolation; (4) if a quarantined individual subsequently becomes infected or contaminated or is reasonably believed to have become infected with a communicable disease or contaminated, such individual shall be promptly moved to

7

isolation; (5) quarantined or isolated individuals shall be immediately released when they are no longer infectious or capable of contaminating others or upon the order of a court of competent jurisdiction; (6) the needs of individuals quarantined or isolated shall be addressed in a systematic and competent fashion, including, but not limited to, providing adequate food, clothing, shelter, means of communication with those in quarantine or isolation and outside those settings, medication and competent medical care; (7) premises used for quarantine and isolation shall be maintained in a safe and hygienic manner and be designed to minimize the likelihood of further transmission of infection or other harms to individuals quarantined or isolated; (8) to the extent possible without jeopardizing the public health, family members and members of a household shall be kept together, and guardians shall stay with their minor wards; and (9) to the extent possible, cultural and religious beliefs shall be considered in addressing the needs of individuals and establishing and maintaining premises used for quarantine and isolation.", a standard that has not been met for the Plaintiffs by either the Defendant (who unlawfully imposed the isolation requirements) or the Commissioner of Public Health (who issued no orders requiring the social distancing the Plaintiffs are unlawfully subject to).

8

11. No order issued, as required by CGS §19a-131b(c), setting forth: "(1) The name of any individual, group of individuals or individuals present within a geographic area to be quarantined or isolated, or the geographic area where such communicable disease is present or contamination exists; (2) the basis for the commissioner's belief regarding the presence of a communicable disease or that contamination exists within the geographical area; (3) the period of time during which the order shall remain effective; (4) the premises subject to quarantine or isolation, that may include, but need not be limited to, private homes or other private or public premises; and (5) other terms and conditions as may be necessary to protect and preserve the public health.", yet the Plaintiffs and those similarly situated are subject to unlawful orders isolating them anyhow. Neither the Defendant nor the Commissioner of Public Health delivered a copy of any such order as required by CGS §19a-131(d), which requires, "Such order shall also inform the individuals quarantined or isolated that they have the right to consult an attorney, the right to a hearing pursuant to this section, clear instructions on how to request a hearing, and that if such a hearing is requested, such individual has the right to be represented by counsel, that counsel will be provided at the state's expense if such individual is unable to pay for such

9

counsel, and that if such a hearing is requested, court fees shall be waived. A copy of the order shall be provided to each individual quarantined or isolated or notice of the order shall be provided by a means likely to reach those affected."

12. The Executive Orders, cumulatively, explicitly provide for, effectuate and have the purpose of the isolation of individuals from each other in a highly restrictive manner that: (1) does not even attempt to test or ascertain infection or immunity; (2) substantially impairs the ability to conduct normal day to day activities; (3) overtly obstructs the ability to engage in religious group worship; (4) dramatically impairs the ability of the Plaintiffs to conduct their business and vocation; and (5) entirely disregards even the advice from the CDC as to the required length of the quarantine. To wit, as to the CDC guidelines published at https://www.cdc.gov/coronavirus/2019-ncov/faq.html, which state, "Quarantine is usually established for the incubation period of the communicable disease, which is the span of time during which people have developed illness after exposure. For COVID-19, the period of quarantine is 14 days from the last date of exposure because the incubation period for this virus is 2 to 14 days. Someone who has been released from COVID-19 quarantine is not considered a risk for spreading the virus to others because they have not

developed illness during the incubation period." However, the social

distancing isolation and quarantine measures ordered by the

Defendant began March 16, 2020, and were extended to April 30,

then to May 20, and now promise to continue, indefinitely.

13. Without any scientific evidence to support it, the Defendant's

response that served to lock the Plaintiffs out of their regular activities

of free association, worship, commerce and political activities

assumed that no immunity could exist or ever be acquired to COVID-

19. The Plaintiffs were put in isolation by the unlawful Executive

Orders, which, for the purposes of CGS §19a-131(6), means, "the

physical separation and confinement of an individual, group of

individuals or individuals present within a geographic area who are

infected with a communicable disease or are contaminated, or whom

the commissioner reasonably believes to be infected with a

communicable disease or to be contaminated, in order to prevent or

limit the transmission of the disease to the general public". Also, the

Plaintiffs have lived under quarantine by operation of the Executive

Orders, which means, for the purposes of CGS §19a-131(9), "...the

physical separation and confinement of an individual, group of

individuals or individuals present within a geographic area who are

exposed to a communicable disease or are contaminated, or whom

the commissioner reasonably believes have been exposed to a communicable disease or to be contaminated or have been exposed to others who have been exposed to a communicable disease or contamination, to prevent transmission to the general public."

14. The primary vector for COVID-19's spread in Connecticut has been nursing homes and hospitals since March 10, 2020. The Defendant has not ordered a lockdown or isolation of employees or individuals working in these environments to those environments, nor has the Commissioner of Public Health, and this has had the known and likely risk that such individuals would spread the disease to their families, who in turn would spread it. The Defendant's response has only served to deny those not suffering from COVID-19 care while clustering COVID-19 patients in an environment where secondary infections and medical error would aggravate that condition and impair patient outcome.

15. In order to justify the ongoing unlawful and unconstitutional orders the Defendant has inflicted upon the Plaintiffs, the Defendant has seen to it that certain actions be taken to distort the data to support the conclusion that more are dying from COVID-19 than are dying from other underlying causes or co-morbitides. For example, the data series for May 2, 2020 at

https://portal.ct.gov/-/media/Coronavirus/CTDPHCOVID19summary5
022020.pdf?la=en specifically tells the reader, "For public health
surveillance, COVID-19-associated deaths include persons who
tested positive for COVID-19 around the time of death (confirmed)
and persons whose death certificate lists COVID-19 disease as a
cause of death or a significant condition contributing to death
(probable)." In other words, those who died of a heart attack, a car
accident or a stroke are considered COVID-19 deaths. Data series
issued by the State of Connecticut, records used in the ordinary
course of business by them, have retained that methodology.

16. None of the COVID-19 data published by the State of Connecticut
    publicly, to date, seperates or identifies that disease from any other
    underlying condition or comorbitidty (including secondary infection or
    hospital acquired infection).

17. The Defendant, prior to issuing his illegal executive orders isolating
    the Plaintiffs and those similarly situated, did not, at all, take into
    account any scientific data or medical literature of how such indefinite
    and prolonged isolation and wholesale economic damage would
    impact the Plaintiffs' well-being.

18. The initial logic of the Defendant's Executive Orders isolating the
    Plaintiffs and others, on March 16 and going forward, was to buy

13

sufficient time in order to prevent overwhelming the healthcare system, to prepare for a hospital surge. The surge never came. Hospitals in many parts of the state are underwhelmed. There is no ventilator shortage as was foretold when the Defendant and the President of the United States asked all Americans to lock down for two weeks to slow the spread.

19. The Defendant, prior to issuing his illegal executive orders isolating the Plaintiffs and those similarly situated, did not, at all, take into account the environment of fear he actively and wilfully promoted, its impact on the well being of all citizens of this State and how gravely it would impact the State's ability to even fund core government functions moving forward.

20. Without consulting the General Assembly, Governor Lamont has entered the State of Connecticut, by executive Fiat, into an Interstate Agreement and Compact ("IAC") with New York and New Jersey on March 16, 2020, as published at https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2020/03-2020/Northeast-Governors-From-Connecticut-New-York-New-Jersey-Announce-Collective-Measures. The Compact has since evolved to include Pennsylvania, Rhode Island, Delaware and Massachussetts, and has neither sought permission from the United States Congress or any of the

14

Legislatures of these States to conduct operations, appropriate

money, implement orders and regulations or otherwise do the things

such a governing body does. On information and belief, said IAC has

taken actions that have included, but were not limited to:

(a) The stopping and detention or questioning of individuals

moving from one state into another;

(b) The restriction and prohibition of registered vessels from

docking at ports and marinas, which is a blockade, which is an

act of war prohibited by Article I §10 of the United States

Constitution;

(c) The suspension of Freedom of Information Act requests

and timeframes in which to respond, keeping secret details and

proceedings of the IAC and hidden from the citizens of these

respective States and even the Legislatures of the States

themselves;

(d) Coordination of the suspension of the Obligations of

Contracts, Unlawful Restraint of Trade, Delay and Restrictions

of deadlines in the Electoral Processes of the States in the

IAC, Restrictions of Liberty of the Citizens of the Several

States in the IAC, and the unlawful restrictions of the due

administration of justice by the courts of the various States

15

unlawfully bound into the IAC; and

(e) Formal agreements on interstate operations, commerce and expenditures of public funds without approval of Congress.

21. CGS §28-9(b)(1) states, in relevant part, "Following the Governor's proclamation of a civil preparedness emergency pursuant to subsection (a) of this section or declaration of a public health emergency pursuant to section 19a-131a, the Governor may modify or suspend in whole or in part, by order as hereinafter provided, any statute, regulation or requirement or part thereof whenever the Governor finds such statute, regulation or requirement, or part thereof, is in conflict with the efficient and expeditious execution of civil preparedness functions or the protection of the public health. The Governor shall specify in such order the reason or reasons therefor and any statute, regulation or requirement or part thereof to be modified or suspended..." In other words, even if, and presuming the Defendant has authority to modify or waive Connecticut General Statutes, he does not have the authority to impose brand new orders as if they are such Statutes, as he has with the Executive Orders impairing movement, freedom of association and the like.

22. All Plaintiffs have been denied the right to conduct their affairs and freely move about without official permission in publicly accessible spaces, public parks, public lands and to use public accomodations.

16

23. Plaintiff Sean Murphy was, at the time of the Executive Orders' rolling and almost daily revision and implementation, in the process of selling his Southbury home. The Executive Orders have abruptly impinged any functional ability to complete the transaction, and led to him having to rent the home he purchased in Tennessee to the previous owners from whom he purchased it. Plaintiff Murphy is now in possession of two homes, the new one which he was forced to rent at a loss. Plaintiff Murphy is also a member of a homeschool group, which he is no longer allowed to gather or associate with as a consequence of Executive Orders 7, 7D and 7N (as he and his wife have four children) – and said homeschool group is religious and meets in a church.

24. Plaintiff Robert Barnes is the captain of a vessel registered with the United States of America (the Black Pearl II, Official No. 613381), a member of a yahct club and duly qualified to and regularly in the habit of taking more than five passengers through ocean waters and otherwise being engaged in international commerce – which he has been forbidden from doing by the Defendant's executive Orders 7, 7D and 7N in addition to his unlawful actions joining an Interstate Compact with New York, which, without permission from Congress, closed shipping and interntional commerce under threat of implied force, and if necessary forcible boarding of vessels deemed to be in violation of executive orders. Plaintiff Barnes was also a

17

delegate to the nominating convention for the Fifth Congressional District, and was denied the right to go as a consequence of the executive orders (7, 7D and 7N).

25. Plaintiff Daniel Reale is a candidate for Congress in Connecticut's Second District, and a Catholic, and active in Town Politics, including proceedings relating to the Town Budget. The Executive Orders, 7N in particular, prohibits him from visiting his parents' house because six individuals live in that house. Plaintiff Reale's family also holds family gatherings for Easter, Thanksgiving and Christmas (and the Easter gathering did not happen) that involve more than five individuals. Plaintiff Reale is also a member of the American Poolplayers Assocation, for which he paid annual dues, and all games of the Spring and Summer Sessions have been rendered illegal by the Governor's Orders along with any ability to associate with either his team or other teams on a weekly basis to facilitate gameplay.

26. The Orders issued by the Defendant have obstructed political activities and the right to vote at Town Budget Referendum.

27. The Orders issued by Defendant Lamont, collectively, have rendered the vast majority of the day to day normal activities of the Plaintiffs illegal under color of law, and instilled fear in the public and those with whom they would associate from doing so.

28. The Orders issued by Defendant Lamont, collectively, have placed the entire

State in which the Plaintiffs live under functional house arrest by shuttering the ability to conduct social calls, commerce and daily activities.

29. The Orders issued by Defendant Lamont, collectively, have far exceeded the authority set forth in Connecticut General Statutes §28-11 in terms of things that have been taken, seized and otherwise disposed of according to the Governor's fiat directives, including all manner of contracts and the proceeds and benefits derived therefrom and all financial and other property benefits that would inure to the participants thereof in existence at the time of the March 10, 2020 declaration of emergency. In doing so, Governor Lamont did not, after taking temporary use of all insurance, rental and other contracts, "fix the amount of compensation to be paid therefor." for the purposes of §28-11(d), and has also forbade, by Executive Order 7G, any functional ability to "petition to the superior court for the judicial district in which the property was taken or to a judge of said court if the court is not in session, praying that just compensation may be determined, which petition shall be accompanied by a summons signed by competent authority, to serve as process in civil actions before said court, notifying the Governor and all persons interested in such property to appear before the court or judge.", by reason that Executive Order 7G suspended the requirement to serve civil process or that the Judicial District Courts actually sit or remain in session.

19

30. Executive Order 7G has been issued in violation of Connecticut Constitution Article I §10, which states, "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay.", in that it has closed the Courts, denied due process and substantively frustrated all ability for the fair and full adjudication of all controveries and contracts.

31. Executive Order 7N has denied the Plaintiffs the right "...have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance." as protected by Connecticut Constitution Article I §10.

32. Article III §1 of the Connnecticut Constitution states, "The legislative power of the state shall be vested in two distinct houses or branches; the one to be styled the senate, the other the house of representatives, and both together the general assembly. The style of their laws shall be: Be it enacted by the Senate and House of Representatives in General Assembly convened.", an authority which the Defendant has wantonly, recklessly, openly and notoriously usurped, by enacting brand new provisions of the General Statutes and denyin the Plaintiffs access to their government and its records and proceedings by suspending open meeting requirements through

20

Executive Order 7B; terming whole classes of persons "non-essential" in their work and occupations by reason of Executive Order 7H; suspending corporate sharehold agreement meeting requirements, DCF visits, and purporting to unilaterally modify federal law by reason of inventing his own schemes concerning HIPPA and Medicare by reason of Executive Order 7I; and suspending all functional due process rights to due process prior to involuntary committment or state interference with child custory by way and reason of Executive Order 7K.

33. The Defendant has entirely and completely abrogated the right of the Plaintiffs to participate in the Home Rule of their municipalities, as gauranteed by Article X of the Connecticut Constitution, by his Executive Orders unilaterally abolishing the requirement for vote at Town Meeting or Referendum through Executive Order hh. The Governor has further, and openly and notoriously abrogated the right to municipal Home Rule by requiring, through Executive Order 7R, that, "...school districts shall continue to employ or restore to employment if already laid off, and pay school staff who are directly employed by the local or regional board of education, including but not limited to teachers, paraprofessionals and other support staff, cafeteria staff, clerical staff, and custodial workers, to the greatest extent practicable."

34. The Defendant, without proven need, scientific evidence or lawful authority,

has imposed requirements on retail outlets he has seen fit to deem

"essential", requiring the Plaintiffs to walk in a prescribed direction and

maintain six feet of distance by operation of Executive Order 7S, and turning

each into an ergonomic hellscape in many stores so as to frustrate

commerce in small organizations and outlets and lend arbitrary preference

to larger retail stores such as Wal-Mart and Home Depot.

35. The Defendant, without proven need, scientific evidence or lawful authority,

has impaired, indefinitely, the Plaintiffs' right to representation by the State

House and Senate Members in their respective districts by usurping all

effective legislative authority. On information and belief, the Defendant plans

to continue to claim and implement emergency powers in perpetuity or to

the extent necessary to reauthor and reinvent the form of this State's very

government.

## IV. Specific Counts the Plaintiffs Allege Against Defendant Lamont

### Count One: All Plaintiffs vs Ned Lamont, under 42 USC §1983 for denying their rights as protected by the Fifth and Fourteenth Amendment in Restricting their Liberties of Movement Without Due Process of Law

36. In the ways complained of, the Defendant has denied the Plaintiffs freedom

of movement and of association, claiming authority to do so under

Connecticut General Statutes §19a-131b.

37. The Defendant is not the Commissioner of Public Health.

38. The Commissioner of Public Health has never provided any written notice to

22

the Plaintiffs that they are infected with COVID-19.

39. The Commissioner of Public Health has never provided any written notice to the Plaintiffs as to any reason that the Plaintiffs are believed to have been exposed to COVID-19.

40. The Commissioner of Public Health has never inquired into the health status of the Plaintiffs or taken those into consideration, or made any determination regarding the Plaintiffs.

41. The Commissioner of Public Health never took into consideration or inquired into the religious or health or other needs of the Plaintiffs.

42. Absent any of the requirements of CGS §13a-131b having been met, the Defendant issued orders that served to isolate and quarantine the Plaintiffs anyhow.

43. After more than the initial 15 days deemed necessary to stop the spread of COVID-19, now two months, the Defendant has arbitrarily continued the restriction of the Plaintiff's movement.

44. The Plaintiffs have had neither substantive or procedural due process rights in order to challenge Executive Orders 7, 7D and 7N isolating and restricting their movement, indefinitely, and impairing their liberty interests to the right of familial and friendship association, and of commerce and of religious worship.

45. The Plaintiffs lack any adequate remedy at law to challenge the unlawful

23

orders of the Defendant as he has closed all Probate and Superior Courts to

functionality sufficient to challenge his orders of quarantine and isolation.

46. The Plaintiffs will suffer irreperable harm absent the issuance of injunctive

relief.

47. By Executive Order 7G, barbershops and salons were closed. On

information and belief, and based on the appearance of the Defendant, it is

reasonably believed that he has somehow had his hair cut between March

10, 2020 and the time this Complaing has been filed.

48. In doing so, and contrary to his own lack of restrictions on movement, the

Defendant has imposed liberty restrictions on the Plaintiffs' movement and

freedom without any due process in violation of the Fifth and Fourteenth

Amendents to the United States Constitution.

**Count Two: All Plaintiffs vs Ned Lamont, under 42 USC §1983 for denying their rights as protected by the First and Fourteenth Amendment in Restricting their Liberties of Association, Speech, the Right to Assemble and the Right to Religious Worship**

49. The Executive Orders of the Defendant are a direct affront to the right of the

Plaintiffs to expressive association for political assembly and protest

purposes in additional to the right to initimate assembly purposes of family

gatherings.

50. The Executive Order 7N, unconstitutionally and unapologetically, forbids and

reinforces the restriction on religious gatherings, "...except that religious,

spiritual or worship gatherings shall not be subject to such increased restrictions, and shall instead remain subject to the prohibition on gatherings of 50 or more people..."

51.  The Defendant has no authority to impose any restrictions on family gatherings that occur on private property, or deem them unlawful by executive order.

52. The Defendant has no authority to impose to impose any restrictions on religious worship, assembly or gatherings that occur on private property, or deem them unlawful by executive order.

53. The Defendant has no authority to impose any restrictions on social gatherings or assembly that occur on private property, or deem them unlawful by executive order.

54. The Defendant has no authority to impose any restrictions on political gatherings or assembly that occur on private property, or deem them unlawful by executive order.

55. The Defendant has issued Executive Orders 7, 7D and 7N that purport, cumulatively and collectively, to limit religious gatherings and worship to 50 and to limit all family, social, political or recreational gatherings to no more than five.

56. All of these orders limiting assembly and restricting movement and association were entered without notice to any single individual, any

25

consideration for their religious or other needs, without consideration to their health or stage of life considerations that would dictate certain religious milestones and events (such as in the case of Catholics, the Catholic Sacraments of Baptism, Eucharist, Confirmation, Confession, Matrimony and Annointing of the Sick).

57. All of these orders limiting assembly and restricting movement and association were entered without regard to human life or dignity as required by Connecticut General Statutes §19a-131b, sanity, reason, medical evidence or common sense.

58. The Defendant had no lawful authority to prohibit any social, religious, recreational or political actibvity on State Lands, as he purports to have done with Executive Order 7R, yet he has.

59. In doing so, the Defendant has brazenly, openly and notoriously infringed on the Plaintiffs' Liberties and Rights of Freedom of Speech, Religious Worship and Association in violation of the First and Fourteenth Amendments to the United States Constitution.


**Count Three: All Plaintiffs vs Ned Lamont, under 42 USC §1983 for denying their right to a Republican Form of Government as Gauranteed Under United States Constitution Article IV §4**

60. The Plaintiffs are all citizens of this State, and subject to the laws and jurisdiction thereof.

61. The Plaintiffs have all been civically involved and taken their role as participants in the public discourse and the issues of the day under the Covenant between the State and its People known as the Constitution of the State of Connecticut.

62. The form and function of government in the State of Connecticut has been decided and determined by the Constitution of the State of Connecticut, from which all authority of elected state officials, the Defendant among them, derives and is in fact limited.

63. The Defendant's unlawful Executive Orders have radically sought to abolish, alter and irrevocably change that form of government politically decided by the People of Connecticut not only in the ways previously set forth, but more specifically in that:

a) They have radically upended any notion of Home Rule and contravened Article X of the Connecticut Constitution by usurping any meaningful way or manner for the Plaintiffs to participate in the local budget process;

b) They have purported to usurp to the Defendant all Legislative authority;

c) They have purported to close and limit any meaningful challenge to the Defendant's decrees or dictates or any other form or manner or wrong or injury upon the Plaintiffs by closing the Courts of this State and

impairing their functionality;

d) They have implemented economic restructuring of this State and the manner in which the People of this State do business and conduct their affairs, carte blanche;

e) They have supplanted the Judicial Branch and its just and proper authority to timely and fairly resolve disputes;

f) They have denied the Plaintiffs and the People of Connecticut At Large the Covenant as embodied in Article I §1 of the Connecticut Constitution stating, "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community.", in that the Defendant has rendered himself superior to the Plaintiffs and all others in this State by unlawful fiat and decree, and has exercised his power unjustly and repressively to subjudicate the Plaintiffs and all others beneath him;

g) They have abrogated Connecticut's Constitution, Article I §2, which states, "All political power is inherent in the people, and all free governments are founded on their authority, and instituted for their benefit; and they have at all times an undeniable and indefeasible right to alter their form of government in such manner as they may think expedient.", in that the Defendant's orders have not only impaired all local budgetary processes and procedures, but they have also impaired

28

the ability to seek or petition for redress of grievance in the courts of this

State, or to otherwise assemble for any effective purpose of mutual

benefit or enrichment.

64. The People of Connecticut have answered the political question of what

form of government they desire. The Defendant has usurped it.

65. Article IV §4 of the United States Constitution states, "The United States

shall gaurantee to every State in this Union a Republican Form of

Government..." The Plaintiffs, citizens of this state, have been denied that

form of government.

**Count Four, All Plaintiffs vs Ned Lamont, under 42 USC §1983 for the Reason that the Defendant has Unlawfully Entered Connecticut into a Compact with New York, New Jersey, Delaware, Massachussetts, Rhode island and Other States Pennyslvania in Violation of Article I §10 of the United States Constitution, and Taking Actions to Enforce it Against the Plaintiffs**

66. The Defendant has, without permission from the Connecticut General

Assembly and the United States Congress, committed Connecticut into the

IAC with the aforementioned States.

67. The IAC, not the individual State Members, will determine how restrictions

on the Plaintiffs' Liberties complained of are managed.

68. The IAC, not the individual State Members, will determine how supplies are

purchased and allocated in their collective response to COVID-19. See

https://www.nbcconnecticut.com/news/coronavirus/gov-ned-lamont-to-make-

announcement-with-regional-governors/2265133/

69. The IAC will, and on information and belief has, utilize resources from the State of Connecticut.

70. The IAC is beyond the reach of Connecticut's Freedom of Information Act.

71. The IAC has previously agreed (as to Governor Cuomo and the Defendant) to the blocking of the entry of registered vessels into ports), until they were finally opened on April 18 (https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2020/04-2020/Governor-Lamont-Governor-Cuomo-and-Governor-Murphy-Announce-Alignment-for-Marinas-and-Boatyards) The prior closure of ports and boatyards to registered vessels was a blockade, which is an act of war.

72. Article I §10 of the United States Constitution forbids any State from entering into any "Treaty, Alliance or Confederation", or engaging in any Act of War, or Entering into any Compact with other States which the Defendant has. To wit, the Defendant has: (1) committed public resources to said compact with New York and other States and subject the Plaintiffs to domestic policies formulated by said States; (2) agreed to close shipping and ports to registered vessels and implose a blockade under color of law; (4) impaired all manner of contracts which the Plaintiffs are a Party to, including but not limited to residential real estate, Plaintiff Barnes' agreement with his Yacht club, Plaintiff Reale's APA membership and all the

30

Plaintiffs' auto insurance policies (which the insurers will attempt to recoup in the form of higher premiums in the future); and (4) otherwise taken action to restrict and impair the interstate commerce and movement and priviledges and immunities of the Plaintiffs, usurping core soveriegn functions of the United States of America.

73. The IAC affords Governors and consultants the Plaintiffs and the Citizens of this State did not elect, appoint or consent to determining the laws and affairs of Connecticut, thereby further subverting both Article I §10 of the United States Constitution and the Connecticut Constitution.

31

WHEREFORE, the Plaintiffs claim,

A. A Temporary and Permanent Injunction Against the Defendant from continuing to engage in the acts complained of in Counts One, Two, Three and Four;

B. Declaratory Judgment that the Acts Complained of Count Counts One, Two, Three and Four are unconstitutional;

C. Declaratory Judgment that the Acts Complained of Count Counts One, Two, Three and Four violated the Plaintiffs' rights are protected by the First, Fifth and Fourteenth Amendments to the United States Constitution;

D. Damages

E. Costs

F. Attorney Fees

G. Other relief the Court deems appropriate


FOR THE PLAINTIFFS,                          PLAINTIFF DANIEL REALE
SEAN MURPHY
ROBERT BARNES,
/s/ Edward Bona                              /s/ Dan Reale
PO Box 13                                    20 Dougherty Ave
Plainfield, CT 6374                          Plainfield, CT 6374
(860) 889-5930                               (860) 377-8047
edward-bona@comcast.net                      headlinecopy@gmail.com

VERIFICATION AND DECLARATION UNDER PENALTY OF PERJURY

I, Daniel Reale, a Plaintiff in this action, having read and reviewed the foregoing as they pertain to me, do declare the same to be true to the best of my knowledge and belief, under penalty of perjury:

Dated: May 19, 2020

Daniel Reale

32